UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MARY FRANCES BECK,<br><br>                Plaintiff,<br><br>   v.<br><br>METROPOLITAN PROPERTY & CASUALTY INSURANCE COMPANY, an insurance company and foreign corporation,<br><br>                Defendant. | CASE NO. C21-5108 BHS<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendant Metropolitan Property and Casualty Insurance Company's ("MetLife") motion for summary judgment. Dkt. 10. The Court has considered the motion and the briefs filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

# I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

## A. Overview

While in the throes of a mental health crisis, Plaintiff Mary Beck set fire to her couch, which spread and engulfed her home. She was later charged with arson. She submitted a claim for the loss under her MetLife insurance policy, which MetLife denied.

The charges were dismissed when Beck entered a felony diversion program. Beck sued MetLife bringing extracontractual claims related to its alleged failure to reasonably investigate, which MetLife contends are barred by Washington's Insurance Fraud Reporting Immunity Act.

The Act provides in relevant part:

> In denying a claim, an insurer . . . who relies upon a written opinion from an authorized agency . . . that criminal activity that is related to that claim is being investigated, or a crime has been charged, and that the claimant is a target of the investigation or has been charged with a crime, is not liable for bad faith or other noncontractual theory of damages as a result of this reliance.
>
> Immunity under this section shall exist only so long as the incident for which the claimant may be responsible is under active investigation or prosecution, or the authorized agency states its position that the claim includes or is a result of criminal activity in which the claimant was a participant.

RCW 48.50.075.

MetLife contends that it is immune to suit because it relied on the pending arson prosecution when it denied Beck's claim. Beck counters that the immunity ended when the prosecutor dismissed the arson charge and that MetLife failed to conduct a reasonable investigation into her mental health status.

B.   **Background**

Beck suffers from bipolar disorder. Dkt. 1, ¶ 7. In the summer of 2017, she stopped taking her medications and began exhibiting erratic behavior. *Id*., ¶ 9. A concerned friend took her to the hospital twice for mental health evaluations. *Id*., ¶¶ 9–10.

On July 27, 2017 Beck set fire to her couch with a torch. *Id*., ¶ 13. The fire engulfed the mobile home where she lived. *Id*., ¶¶ 6, 13. Law enforcement and the fire department responded. *Id*. A neighbor explained Beck's mental health condition, that she had stopped taking her medication, and that Beck had recently crashed her car and destroyed possessions. *Id*. Law enforcement took Beck to the hospital for a mental health evaluation. *Id*. Shortly thereafter, Beck was civilly committed for 30 days. *Id*., ¶ 14.

MetLife was notified of the fire and began its investigation. Dkt. 12, ¶ 3. Its investigator interviewed Beck, and Beck told him she had started the fire on purpose. *Id*., ¶ 5. MetLife hired a forensic engineering firm to investigate the loss who concluded that Beck lit the fire. *Id*., ¶ 6.

In October of 2017, the Kitsap County Prosecutor filed an information charging Beck with arson. Dkt. 12-2 (Beck "knowingly and maliciously caused a fire or explosion which damaged a building . . . ."). MetLife reviewed this and other public records as part of its investigation. Dkt. 12, ¶ 7. MetLife then examined Beck under oath in December of 2017. *Id*., ¶ 8. It denied her claim in January 2018, deciding that the loss was not a covered accident and invoking the exclusion for deliberate or criminal acts. Dkt. 12-7. In

1 October 2018, the prosecutor moved to dismiss the charges without prejudice because

2 Beck was entering a felony diversion program. Dkt. 11-3.

3 Beck timely sent MetLife pre-suit notice under the Insurance Fair Conduct Act in

4 December 2020 and then sued on January 7, 2021 in the Kitsap County Superior Court

5 for the State of Washington, alleging bad faith, violations of Washington's Consumer

6 Protection Act and Insurance Fair Conduct Act, and negligence. Dkt. 12, ¶ 10; Dkt. 1-2.[1]

7 On February 10, 2021, MetLife removed to this Court. Dkt. 1.

8 On March 4, 2021, MetLife moved for summary judgment. Dkt. 10. On March 18,

9 2021, Beck responded. Dkt. 13. On March 25, 2021, MetLife replied. Dkt. 16.

## II. DISCUSSION

MetLife contends that its denial is covered by the immunity statute because it occurred while the investigation was pending, and, in the alternative, the criminal information represents an "authorized agency" position that the claim includes criminal activity in which Beck participated. Beck asserts that the immunity statute permits an insurer to pause its investigation while authorities investigate a potential crime. However, she contends that MetLife should have resumed its investigation when she was not convicted.

**A.     Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material

---

[1] MetLife notes that Beck likely did not bring a contractual claim because it would be barred by the one-year suit limitations period. Dkt. 10 at 5.

fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory,

nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

**B.     Merits**

The Court's "primary duty in statutory interpretation is to ascertain and carry out the legislature's intent." *State v. Pratt*, 196 Wn.2d 849, 853 (2021) (citing *State v. Bigsby*, 189 Wn.2d 210, 216 (2017)). First, the Court should examine the statute's plain meaning "by construing the words of the statute itself and giving effect to that plain meaning." *Id*. (citing *State v. Hirschfelder*, 170 Wn.2d 536, 543 (2010)). Plain meaning is established in context of the statutory scheme, and if the statute remains ambiguous, the Court may "turn to statutory construction, relevant case law, and legislative history to determine legislative intent." *Id*. (quoting *State v. Jones*, 172 Wn.2d 236, 242 (2011)).

"[A]n acquittal in a criminal proceeding by reason of insanity does not preclude an insurer from proving that its insured's conduct falls within an 'intentional and expected' exclusion of coverage." *Pub. Emps. Mut. Ins. Co. v. Fitzgerald*, 65 Wn. App. 307, 309 (1992). "[W]hether an insured was incapable of forming an intent because of mental illness or defect is a factual determination." *Id*.

Beck contends that the immunity statute protected MetLife from claims related to its investigation only while the criminal investigation was active. She alleges that a reasonable, good faith investigation of her claim would have revealed that due to her mental health crisis, she was unable to form intent at the time she set the fire, Dkt. 1-2, ¶ 19, and thus the policy's intentional or criminal acts exclusion was inapplicable. She argues that the statute's purpose is to permit insurers to pause their investigation while

official authorities investigate and to rely on a criminal conviction if one is obtained. Dkt. 13 at 7–9. However, if charges are dismissed, "then the insurer must conduct its own reasonable investigation just as it would have to do in any other claim." *Id.* at 8.

MetLife counters that it is statutorily immune from Beck's extracontractual claims related to any failure to investigate (beyond the investigation they already conducted). MetLife contends that the dispositive detail is the timing of the denial—that it occurred while the prosecution was active. Dkt. 10 at 8; Dkt. 16 at 2. Otherwise, MetLife argues, this would leave the insurer vulnerable to bad faith claims when a prosecution ends for a reason unrelated to culpability, such as death of the defendant. Dkt. 10 at 8. Beck reasonably points out that this would create a perverse incentive for the insurer to race to deny the claim while an investigation remained active and would leave immunity in place even if the insured was exonerated. Dkt 13 at 9. Alternatively, MetLife argues, it reasonably relied on the written statement of the prosecutor's position that Beck committed a crime. Dkt. 10 at 8.

Only two reported cases have applied the immunity statute—*Selliken v. Country Mutual Insurance Co.*, No. 12–CV–TOR, 2013 WL 4759083 (E.D. Wash. Sept. 4, 2013), and *Anderson v. Country Mutual Insurance Co.*, No. C14–0048JLR, 2015 WL 687399 (W.D. Wash. Feb. 18, 2015). The Court agrees with MetLife that *Selliken* is the more instructive.[2]

---

[2] In *Anderson*, no written report identified the claimant as the target of an investigation, and the law enforcement statement identifying him as a "person of interest" came in deposition the insurer conducted a year after it denied coverage—so the insurer did not rely on an

In *Selliken*, local law enforcement investigated a fire at the insured's home as arson, concluding the fire was intentionally set and the insured was the only suspect. 2013 WL 4759083 at *1. For unclear reasons, the prosecutor declined to press charges. *Id*. The insurer relied on the law enforcement conclusion and invoked the immunity statute. *Id*. at *2. The insured failed to counter the insurer's immunity argument, and the court concluded that even if he had not, the investigation clearly reflected the authority's well-supported position, so the immunity statute applied. *Id*. at *3. Beck argues the Court should not follow *Selliken* because that insured did not argue immunity could expire and because the case did not address the insured's ability to form intent. Dkt. 13 at 12.

On the facts of this case, MetLife's second theory, reliance on the criminal information, is consistent with the plain language of the statute. Therefore, MetLife had no further duty to investigate Beck's mental health. Beck contends that because the charges were dismissed, the criminal information cannot constitute a "final" or "current" position of the prosecutor's office. Dkt. 13 at 17. This argument is unpersuasive.

The prosecutor's motion to dismiss the charges against Beck clearly indicates that the dismissal was without prejudice and due to Beck's enrollment in a felony diversion program. Dkt. 11-3. Enrollment in a felony diversion program would not negate the prosecutor's statement of position in the criminal information that Beck "knowingly and maliciously caused a fire." Dkt. 12-2. The statute provides two avenues for immunity—

---

authority's written opinion when issuing its denial. 2015 WL 687399, at *11. Therefore, the Court unremarkably held the immunity statute did not apply. *Id*.

immunity that exists so long as the incident is under active investigation or prosecution, and immunity that exists so long as the authority states its position that the claim "includes or is a result of criminal activity in which the claimant was a participant." RCW 48.50.075. Beck's argument, that a criminal conviction is required, is not consistent with that plain language.[3] While it is possible that the "active investigation" language could require the insurer to further investigate if the authorized agency stated its position that the claim *did not* "include or [wa]s the result of criminal activity in which the claimant was a participant," that is not what occurred here. Therefore, RCW 48.50.075 immunizes MetLife from Beck's extracontractual claims.

## III.  ORDER

Therefore, it is hereby **ORDERED** that MetLife's motion for summary judgment, Dkt. 10, is **GRANTED**, and all of Beck's claims against it are dismissed with prejudice.

The Clerk shall enter a **JUDGMENT** and close the case.

Dated this 20th day of May, 2021.

BENJAMIN H. SETTLE
United States District Judge

---

[3] Beck argues that though the authority's position clause "is not a perfect picture of clarity," it should be construed as applying only when an investigation is complete but there is no prosecution "due to some unique situation (like the suspect's death) that renders a prosecution impossible," so the insurer could rely on the investigation and enjoy immunity. Dkt. 13 at 17–18 n.5. However, as noted, Beck earlier argues that if a criminal case terminates due to the claimant's death, the insurer "would need to conduct a reasonable investigation, just as it would in any other case." *Id.* at 10. Thus, Beck appears to be reading the statute to require a criminal conviction, which is not consist with its plain language.